## KEITH v. WHEELER.

Opinion delivered November 18, 1912.

1. TRUST—RESULTING TRUST—ADVANCEMENT.—When a man buys an estate and takes the deed in the name of a stranger, a trust results by operation of law to him who advances the purchase money; but if the nominal purchaser is the wife or child or one to whom the buyer stands in the relation of parent, an advancement or gift is presumed. (Page 322.)

2. ADVANCEMENT—PRESUMPTION.—The presumption of an advancement is not conclusive, but may be rebutted by antecedent or contemporaneous declarations and circumstances which tend to prove the intention of the person who furnished the money to buy the estate that the grantee should hold as trustee, and not beneficially for himself. (Page 322.)

3. TRUST—RESULTING TRUST—EVIDENCE.—A resulting trust can be established against a grantee of land in favor of the person furnishing the money to buy the land only by evidence that is clear, convincing and satisfactory. (Page 323.)

4. SAME—BURDEN OF PROOF.—Although there is a presumption of a trust resulting to the party paying the consideration for land, the burden of proof on the whole case is upon the one who seeks to establish a resulting trust. (Page 323.)

5. ADVANCEMENT—PERSON IN LOCO PARENTIS.—Where a stepfather treated his stepdaughter as his own child, and she treated him as a father, he stood to her in loco parentis, and a conveyance to her of land of which he furnished the consideration is presumed to have been an advancement. (Page 323.)

6. ADVERSE POSSESSION—WHAT CONSTITUTES.—Where a stepfather conveyed a one-half interest in land to his wife and the other half to his stepdaughter, the fact that he paid the taxes thereon and collected the rents during his lifetime, without making any claim adverse to the stepdaughter's interest did not amount to possession adverse to her. (Page 324.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellant brought suit in ejectment against appellee for the possession of lot 4, block 94, in the city of Little Rock, claiming to be the owner thereof, and that appellee had been in unlawful possession of same since September, 1908.

Appellee answered, denying that appellant was the owner of the property and that he was in unlawful possession thereof; alleged that the property was purchased by his father, James Keith, and paid for with his own money, but, for some reason unknown, the deed was taken in the name of appellee; that his father continued in the undisputed and adverse possession of the property, claiming it as his own, until his death, on September 14, 1908, and pleaded the seven years' statute of limitation.

Appellant replied, denying that James Keith purchased the property for his own use and benefit; alleged that it was purchased out of his consideration and love and affection for her, and given to her on that account and for services rendered and to be rendered for him by her; that he was never in the adverse possession thereof, and at all times acted in the control of said property as her agent and made no adverse claim thereto.

The cause was, by agreement, transferred to the chancery court, where appellant filed an amended answer and cross complaint, reiterating his claim of equitable ownership as in the first answer and praying that the legal title to one-half of the property be divested out of plaintiff and vested in him and his title quieted thereto.

Appellee replied to the cross complaint, alleging that in 1850, when she was a small child, her mother, Elizabeth Wheeler, married James Keith, father of appellant, from which marriage he was born; that from that time until the death of James Keith she was a member of the family of said James Keith, and lived at his home a greater part of the time, and was treated by him as his daughter, and looked upon him as her father, waited upon him as a daughter should, and that he advised her and attended to business matters for her, as a father would in such relations; that she was paid no regular sums for her services in the house or in the office, where she worked, but given various sums at different times, but nothing

like what her services were reasonably worth; that he was, from March, 1889, until the time of his death, a man of large property, and gave her a one-half undivided interest in the lot in controversy at that time in recognition of the services rendered by her in looking after business matters in St. Louis and elsewhere and for her services in waiting upon himself and plaintiff's mother, in consideration for love and affection; denied that James Keith bought the lot in controversy for his own benefit, and that he held exclusive possession of the same, and that appellant ever acquired a beneficial ownership in said lot, and that she never knew of the existence of the deed to said lot until after the death of James Keith; denied that she had no possession of same until after June 2, 1910, nor any possession thereafter until by virtue of the commissioners' deed of June 22, 1910, conveying the other undivided half interest; denied that the trust resulted to him in favor of James Keith, or that he became the equitable owner of the lot, and that she held the title for him, and alleged that he acted solely as her agent in all matters in regard to the control of said property and the collection of the rents.

It appears that James Keith married Elizabeth Wheeler in St. Louis in 1850, who, at the time, was the mother of Amelia Wheeler, appellee, and another daughter, who later became Mrs. Pierce, and that appellant is the only surviving child of said marriage. After the marriage, they lived in St. Louis, until 1874, the daughters by the former marriage living with the family as their children and were treated by James Keith as daughters and looked upon him as the head of the family and as their father, and so recognized him. In 1874 James Keith and his wife moved to Little Rock, and the daughters, at the time being grown and working in St. Louis, did not come to Little Rock, although urged to do so by Mr. Keith, but remained in St. Louis in their dress making business for some years. The relations between the parties continued intimate and close through the years, and in 1891 Mrs. Pierce, in response to frequent invitations, came to Little Rock and made her home again with Mr. and Mrs. Keith, and two years later appellee also came in response to like invitations and did likewise. Appellee, before her coming to Little Rock, attended to the business interests of James

Keith, still retained in St. Louis, and performed various and sundry services for him in relation thereto, without any charge for such services, being given presents by him and advice in regard to investments and matters of business. On March 9, 1899, James Keith purchased the lot in controversy, and had the deed thereto made to his wife, appellee's mother and to appellee jointly. This was before she came to Little Rock to live with them. After her arrival, he told her in the presence of her mother that he had purchased the lot and had it deeded to herself and her mother as a present to them, and she later went into his office and helped to attend to his affairs in business, as well as to take care of his household and personal belongings, and attend to the wants of her mother, his wife, who was sick. He paid her $30 a month for two or three months after she went into his office, and thereafter, although she continued to work in his office and care for his affairs at home, for about fifteen years and until his death, he paid her no stated salary, but gave her money along as she requested it.

Before his death, when he was an old man and during his visit to the old world, he frequently wrote to her about matters of business, his own feelings and health, and sent messages of affection to her, his son, Alex Keith, and appellee's sister. Appellee stated that he never, at any time, claimed to be the owner of the property after he told her he had it conveyed to her and her mother as a gift, and that he consulted her with reference to having another house placed upon the lot after its purchase, and approved her idea, and had a house moved thereon. He collected the rent and paid the taxes, during the life of his wife and on up to the time of his death, and did not account to appellee for rents, but made no claim of ownership to the lot. It is not disputed that the conveyance was intended as a gift to the other undivided half of the lot to appellee's mother, nor that appellee became the owner thereof at the partition sale.

Appellant was a man of large means and property on the date of the conveyance to his wife and daughter in March, 1899, and continued so until his death. The house testified to by appellee as having been moved upon the lot in controversy by James Keith, after consultation with her and her approval of the plan, was put there in 1904.

The court found that appellee was the owner of the lot, and had been the owner of the undivided one-half interest in same since March 2, 1899, and was entitled to the rents and profits collected by appellant and rendered a decree for recovery thereof, for the possession of the lot and said rents, from which judgment appellant appealed.

*James Coates* and *J. W. Blackwood*, for appellant.

1. A trust resulted by operation of law. 98 Ark. 452; 40 *Id.* 67; 2 Words & Phrases, 1125, 1136; 3 Pom., Eq. Jur., § 1039; 4 Words & Phrases, 3477.

2. Appellee is barred by *laches* and the statute of limitations. Kirby's Dig., § 5056; 180 U. S. 552; 99 Mass. 119; 61 Ark. 589; *Ib.* 538.

*Ratcliffe & Ratcliffe*, for appellee.

1. There was no resulting trust. Proof of such a trust must be clear and convincing. 79 Ark. 417; 1 Perry on Trusts, § 139; 88 S. W. 949; 76 Ark. 615; 71 *Id.* 373. The whole question is one of intention. 3 Pom., Eq. Jur., § § 1035-1040; 1 Perry on Trusts, § § 139-40; 40 Ark. 62; 27 *Id.* 77. Proof of intent to make the gift will rebut the presumption. 3 Pom., Eq. Jur., § 1040; 45 W. Va. 245; 32 S. E. 176; 71 Ala. 159. Keith stood *in loco parentis* to appellee, so the presumption of a trust is rebutted. Cases *supra*. Further, he told appellee it was a gift. 1 Perry on Trusts, § 147. He was a tenant in common. 68 Ark. 534.

2. The statute of limitations never commenced to run. 71 Ark. 373; 48 *Id.* 17; 52 *Id.* 188; 1 Perry on Trusts, § 146; 61 Ark. 527; 99 *Id.* 84; 57 *Id.* 583, 589; 65 Ark. 422.

3. There was no *laches*. 61 Ark. 527.

KIRBY, J., (after stating the facts). It is insisted for appellant that a trust resulted to James Keith, appellant's father, by operation of law, upon the purchase of the lot in controversy, and that appellee's claim is barred by laches and limitations.

"When a man buys an estate and takes the deed in the name of a stranger, a trust results by operation of law to him who advances the purchase money. If, however, the nominal purchaser is the wife or the child of the person from whom the money comes, it is presumed to have been an advancement

or a gift. But this presumption is not conclusive. It may be rebutted by antecedent or contemporaneous declarations and circumstances which tend to prove the intention of the person who furnished the money to buy the estate that the grantee should hold as trustee and not beneficially for himself." *Milner* v. *Freeman,* 40 Ark. 67; *Foster* v. *Treadway,* 98 Ark. 452; *Spradling* v. *Spradling,* 101 Ark. 451.

"But a determination of the question as to whether or not such trust resulted from the transaction depends entirely upon the intention of the parties themselves. When a husband pays the purchase money and takes the deed in the name of his wife, the law presumes that it was his intention to make a gift to her of the land, because he is under obligations to provide for her." *Spradling* v. *Spradling,* 101 Ark. 451.

Such a trust can not be established by a slight preponderance of the testimony, nor anything short of evidence that is clear, convincing and satisfactory. *Foster* v. *Beidler,* 79 Ark. 425; *Chambers* v. *Michael,* 71 Ark. 373; *Tillar* v. *Henry,* 75 Ark. 451; 3 Pom. Eq. Jur., § 1040.

"And, although there is a presumption of the trust resulting to the party paying the consideration, the burden of proof on the whole case is upon the one who seeks to establish a resulting trust." 1 Perry on Trusts, § 139; cases last cited *supra.*

Appellee was a child at the time of her mother's marriage and lived for years in the family with her stepfather, treating him as a father and being treated as a child, and after many years away from the family home, which had been transferred to Little Rock, upon his invitation and solicitation, resumed her place in the family, where the same relations continued, she asisting him at the office and caring for him and being cared for by him in the family, until his death, and her stepfather under these circumstances stood *in loco parentis* to her, and the conveyance is presumed to have been a gift.

It is undisputed that the conveyance to herself and her mother was a gift to her mother of the property conveyed and always so regarded, and there is no sufficient reason to regard the conveyance to her otherwise, nor is the testimony sufficient to overcome the presumption that it was intended as a gift.

From the purchase of the lot to the death of appellee's

mother, James Keith looked after the lot for his wife, who was tenant in common with appellee, until her death, and from then to the time of her death, being himself, during such last period, a tenant by the curtesy and in common with appellee. It is true he controlled the property, paid the taxes, collected the rents therefrom and did not account to appellee therefor, but he did not dispute appellee's title thereto, nor make any claim of title in himself, inconsistent with her ownership, and such action was referable to his duty to his wife and appellee in the relation occupied by him and could not amount to adverse possession.

Appellee was being cared for in the family and supported by her stepfather, and there was no reason why she should demand an accounting of the rents, and there was no knowledge of any adverse claim on his part brought home to her; and he had theretofore acknowledged her right upon the making of the gift and never thereafter disputed it. Under such circumstances, his possession, if he had been a stranger, being a tenant in common, could not have been regarded adverse to appellee, nor set the statute in motion against her. *Singer v. Naron*, 99 Ark. 451. It is not claimed that her suit was too long delayed after the death of her father, and possession taken by appellee.

The decision of the chancellor was right, and is affirmed.