W. B. WORTHEN COMPANY v. VOGLER.

Opinion delivered September 27, 1920.

1. FRAUDS, STATUTE OF—PAROL AGREEMENT FOR INTEREST IN LAND.— A parol agreement that another shall be interested in the purchase of land without the advance of money by the other person, there being no other element in the case than that of a broken promise to reconvey, can not be made the basis of a trust, either express or implied.

2. Trusts—broken promise to buy land for another.—A · trust *ex maleficio* can not be established merely on a broken promise to purchase lands for another; there being no positive fraud perpetrated other than the breach of the promise.

3. Trusts—parol agreement.—A parol agreement to purchase property from the purchasers at a commissioner's sale at a mortgage foreclosure and to hold it in trust for the mortgagor was within the statute of frauds.

Appeal from Pulaski Chancery Court, *John E. Martineau,* Chancellor; reversed.

*John F. Clifford,* for appellants.

1. The oral agreement or promise, even if sufficient to constitute a trust, was void under the statute of frauds, and regardless of the existence of any trust both Worthen Company and Mrs. Worthen were innocent purchasers without notice and for substantial value, and (3) that Vogler can not come into equity and admitting the fact that Mr. Worthen had insisted ·in the previous transaction that his bank would not loan money on the property if he, Vogler, "had anything to do with it," and having stood by and seen a large sum of money loaned Kanis on the property with his consent, afterward claim, as against Worthen, that he, Vogler, held the beneficial interest; that Kanis was a mere trustee for him. No trust existed under the facts, as there was no writing. Kirby's Digest, § 3666; Pomeroy, Eq. Jur. (4 ed.), par. 981; 41 Ark. 393; 108 *Id.* 276; 114 *Id.* 128; 50 *Id.* 71. Kanis paid all the purchase money and there was no resulting trust, nor is there evidence sufficient to create a constructive trust. 101 Ark. 459. There is no proof positive of fraud. 73 Ark. 313. If there was only a parol promise, the statute of frauds applies. *Ib.* 310. There is no allegation of fraud in the record. The facts here are identical with those in 95 Ark. 493. See, also, 109 Ark. 335. There was no trust *ex maleficio.* 101 Ark. 451; 55 *Id.* 414.

2. Conceding the promise Kanis made to Vogler to be a valid trust, no notice was given to third parties, and they are not bound. 26 R. C. L. 1362.

3. Vogler has no standing in a court of equity. He did not come into court with clean hands, nor is he willing to do equity, and on his own testimony he is entitled to no relief whatever. Pom., Eq. Jur. (4 ed.), par. 1223, etc.

*W. C. Adamson,* for appellees.

This case does not fall within the statute of frauds, because this was a sale of lands, but the title was taken in the name of Kanis simply as security for a debt and does not fall within the statute. This case falls squarely within the rule in 109 Ark. 335, but if it did not, on account of being an oral agreement to purchase land for another, it would be enforceable as a constructive trust. 19 Ark. 39; 41 *Id.* 264; 125 *Id.* 34. If the grantor or lessor had notice, he would be estopped. 69 Ark. 513. Equity never lends its aid to one who invokes its aid to perpetrate a fraud. 52 Ark. 207.

Vogler did not surrender his right to redeem in order enable Kanis to borrow the money from the bank. The fact that Vogler stood by and permitted Kanis to take the title in his own name and to borrow from the banks does not estop Vogler from contesting the right of appellants to hold the property as innocent purchasers.

Mrs. Mollie P. Worthen is chargeable with whatever notice affected George Worthen and the Worthen Company or Gordon N. Peay. Appellants are not *bona fide* purchasers, because there was no new consideration and they did not surrender any security. 49 Ark. 214. Appellants are not *bona fide* purchasers, because they are chargeable with notice, both actual and constructive, of Vogler's rights, as the evidence shows. Equitable mortgages need not be recorded and may be enforced against parties purchasing with notice of them. 37 Ark. 511; 43 *Id.* 464; 60 *Id.* 595; 61 *Id.* 128; 94 *Id.* 503. One who purchases with notice of another claim is not an innocent purchaser. 77 Ark. 309; 101 *Id.* 403. The burden of proof is on him who claims the protection as a *bona fide*

purchaser without notice of a prior unrecorded deed. 56 Ark. 537. Where one has sufficient information to lead him to a fact, he shall be deemed conversant with it. 58 Ark. 91. A purchaser of land takes with constructive notice of whatever appears in his chain of title, and, if sufficient appears therein to put him on inquiry, he is charged as if with actual notice. 58 Ark. 322. See, also, 69 *Id.* 442. Under the evidence it is clear appellants were not innocent purchasers.

McCulloch, C. J. Appellee, Henry O. Vogler, was, prior to the year 1918, the owner of considerable real estate in the cities of Little Rock and North Little Rock, and he mortgaged the same to W. B. Worthen Company, a banking corporation of Little Rock, and the People's Savings Bank, another banking institution, to secure certain debts which at the time of the foreclosure of the mortgages amounted to upward of the sum of $40,000. The mortgage to W. B. Worthen Company was prior to the one to the other bank, but both mortgages were foreclosed in the same decree rendered July 1, 1918, directing a sale of the property by a commissioner. The commissioner advertised, in accordance with the directions in the decree, for a sale of the property on July 29, and appellee Vogler attended the sale and bid in the property in separate lots for sums aggregating $36,010. The sale occurred at noon on the day mentioned, and the commissioner notified appellee that he must make good his purchase by furnishing security for the purchase price not later than 2 o'clock of that day. Appellee was unable to obtain a surety and forfeited his purchase, whereupon the commissioner put the property up again for sale, and it was bid in by the two mortgagees for the aggregate sum of $32,750. Another piece of property embraced in the mortgages and in the decree was not sold at that time by reason of the fact that the commissioner had, by inadvertence, omitted it from the advertisement of sale, but it was subsequently sold by the commissioner, and

that particular piece of property is not involved in the controversy between appellee and these appellants.

After appellee had failed to make good his purchase of the property at the sale, he appealed to F. Kanis, an acquaintance of his, to help him in rescuing the property from the sale, and Kanis agreed to help him by signing his bond to secure the purchase of the property. This conference occurred the night after the sale, and the next day they went to the purchasers of the property and requested them to transfer the purchase to appellee and accept Kanis as surety, and lend appellee a part of the purchase price, but each of the purchasers declined to do so. They agreed, however, with Kanis that if he desired to take title to the property they would transfer their respective bids to him and lend him sufficient money to finish paying for the property. They required, however, that he accept the purchase at the original price of $36,010 bid by the appellee. Kanis had $15,000 of his own money in the bank, and he used this on the purchase and borrowed the balance from the purchasers, the two banking corporations. The purchase was transferred to Kanis by the two purchasers at the sale, and on August 12 the court confirmed the sale as transferred to Kanis, and he paid the purchase price, waiving the terms of credit.

There was at that time some kind of an agreement between Vogler and Kanis that Vogler should have the right to redeem the property by repaying to Kanis the amount he had paid out. There is a slight conflict in the testimony, which, we think, in the view hereafter expressed in this opinion, is immaterial. We may treat it as settled by the evidence that Kanis agreed with Vogler to give him twelve months within which to redeem the property from the former's purchase of it under the circumstances detailed above.

One piece of the property constituted Vogler's home, and he continued to reside there and paid rent to Kanis at the rate of $75 per month, with the understanding that if he redeemed the property the rent should be ac-

counted for in the settlement. The remainder of the property fell into the possession of Kanis under his purchase, and Vogler assisted him in attending to the renting of it.

Vogler did not redeem the property, and he paid nothing to Kanis, except the rent on the home place, and on November 23, 1918, Kanis delivered to Vogler a written notice, as follows:

"This is to notify you that after December 10, 1918, your right and privilege for redeeming property from first sale is ended. I will be compelled after that time to dispose of this property.    (Signed)       F. Kanis."

In February, 1919, Kanis sold and conveyed to Mollie P. Worthen one of the Little Rock pieces of property (not the home place) for the price of $8,800, and also sold and conveyed to W. B. Worthen Company one of the lots in North Little Rock for the consideration of $1,600. On April 7, 1919, Kanis applied to the chancery court of Pulaski County for a writ of assistance against Vogler to obtain possession of the home place which was still being occupied by Vogler, and the latter responded to the petition, setting up his right to redeem the property, and in that proceeding the court entered a consent decree, reciting the fact that Vogler had the right under the agreement with Kanis to redeem the property within twelve months from August 12, 1918. Kanis' vendees, above mentioned, were not parties in this proceeding and did not become parties to any effort on the part of Vogler to redeem the property until some time during the month of September, 1918. After those vendees, Mollie P. Worthen and W. B. Worthen Company, were made parties, the cause proceeded to final decree before the chancellor in favor of Vogler, declaring his right to redeem by repayment of the amount Kanis had expended in the purchase of the property, with interest. It was decided by the court that Mrs. Worthen and W. B. Worthen Company were not innocent purchasers from Kanis, and that Vogler was entitled to redeem as against

them. They prosecuted the appeal from that decree, which is now before us for determination. Kanis did not appeal.

The salient facts of the case are that the alleged agreement between Vogler and Kanis for the redemption of the property was not made until after the sale by the commissioner to the two mortgagees who were the plaintiffs in the foreclosure decree, and that Vogler did not comply with that agreement, nor did he pay anything on the purchase price of the property. The agreement rests in parol, and this suit is an attempt to establish a trust in favor of Vogler as against Kanis and his vendees.

Appellant, among other defenses, pleaded the statute of frauds. It is too well established for controversy that a parol agreement that another should be interested in the purchase of lands without the advance of money by the other person, there being no other element in the case than that of a broken promise to reconvey, is within the statute of frauds and can not be made the basis of a trust, either express or implied. *Hackney* v. *Butts,* 41 Ark. 393; *Gainus* v. *Cannon,* 42 Ark. 503; *Bland* v. *Talley,* 50 Ark. 71. The doctrine is stated in *Bland* v. *Talley, supra,* as follows:

"Now, a parol agreement that another shall be interested in the purchase of lands, or a parol declaration by a person that he buys for another without the advance of money by that other, falls within the statute of frauds and can not give birth to a resulting trust." Numerous other decisions of this court could be recited, and many of them are referred to on the briefs of counsel.

It is equally well settled that a trust *ex maleficio* can not be established merely upon a broken promise to purchase lands for another, there being no positive fraud perpetrated other than the breach of the promise. *Ammonette* v. *Black,* 73 Ark. 310; *Bragg* v. *Hartney,* 92 Ark. 55; *Spradling* v. *Spradling,* 101 Ark. 451; *LaCotts* v. *La-Cotts,* 109 Ark. 335.

It is contended on behalf of appellee Vogler that the case falls within the decision of this court in *Strasner* v. *Carroll,* 125 Ark. 34, but we think the facts of the case mentioned are so entirely dissimilar that the decision has no bearing on the present case. There the purchaser at the sale was under agreement to buy for the mortgagor at the sale by the commissioner and to hold the property as trustee and give him an opportunity to redeem it. He purchased it at a grossly inadequate price and induced the mortgagor, to whom the promise was made, to rely upon the agreement and to refrain from attending the sale, or to make any further effort to protect his rights. In other words, there was fraud perpetrated whereby the mortgagor lost his property and the purchaser became the owner in violation of the promise to reconvey. In the present case there is no element of fraud on the part of Kanis, the purchaser, so far as disclosed by the evidence. There is a conflict in the testimony as to the length of time that Kanis was to give Vogler in which to redeem. Kanis claimed that originally he was to give three months. However, we treat that issue as settled in favor of Vogler, that he was to have twelve months, but a controversy arose between Kanis and Vogler as to the value of the property, and Kanis testified that it had been misrepresented to him by Vogler as to the value. There is a conflict in the testimony as to the market value of the property, but even after the controversy arose Kanis by written notice to Vogler restricted the latter's right to redeem to seventeen days from the date of the notice. This gave Vogler four months from the date the alleged agreement was made in which to redeem, and he failed to take advantage of it within that time or even in the time alleged to have been agreed upon according to his contentions. There is some testimony tending to show that the price at which Kanis sold the property to Mrs. Worthen and W. B. Worthen Company was inadequate, but there is not a great discrepancy between the testimony in the strongest light favorable to Vogler, and it can scarcely

be said that in accordance with the preponderance of the testimony there was any substantial discrepancy. Certainly, the testimony does not warrant the finding that the price was grossly inadequate so as to indicate fraud or collusion between Kanis and appellants as his vendees. There is, in other words, nothing in the purchase that would justify a finding of any positive fraud on the part of Kanis—nothing more than a mere broken promise to allow twelve months within which to redeem. This distinguishes the case from *Strasner* v. *Carroll*, *supra*. The cases are distinguishable also, in that in the former case the agreement occurred before the commissioner's sale, and the mortgagor lost his right to protect himself by being induced to absent himself from the sale. Here the sale had already taken place, and the title had passed from Vogler to the purchasers at the commissioner's sale. The agreement was, therefore, nothing more or less than one by Kanis to purchase the property from the vendees at the commissioner's sale and to hold it in trust for appellee Vogler. This was, according to the authorities already cited, clearly within the statute of frauds and unenforceable.

Again, it is contended that the evidence established an agreement on the part of Kanis to purchase the property merely as security for the money he advanced, and that it should be treated as an equitable mortgage not within the statute of frauds. The case of *LaCotts* v. *LaCotts, supra,* is relied on as sustaining this contention. There is, however, a distinction between that case and the present one in the fact already recited that the sale was completed when this agreement was made and that the title had passed out of Vogler to the purchasers at the sale. To declare a trust under those circumstances would be in conflict with the statute of frauds, for the agreement after all would, under those circumstances, be nothing more or less than one to purchase the property to hold in trust for another.

We are unable to see how under any theory of law as applied to the facts of this case that appellee is enti-

tled to any relief. The decree as to appellants, Mollie P. Worthen and W. B. Worthen Company, is therefore reversed and the cause remanded with directions to render a decree against Vogler's right to redeem the property purchased by them.