GEORGE *v.* DONOHUE.

4-4016

Opinion delivered November 4, 1935.

*Will Steel,* for appellant.

*J. D. Head,* for appellees.

MCHANEY, J. This is an appeal from a decree of the chancery court sustaining a demurrer to appellant's amended and substituted complaint against appellees, wherein he refused to plead further and his complaint was dismissed for want of equity. The question is: Did the complaint state a cause of action? The substance of the complaint is that appellant and appellee, R. J. Donohue, had entered into an oral agreement that they would obtain a lease, under an oral option from the Texarkana Oil Corporation by getting some one who would pay $10,000 therefor, for the purpose of drilling a

well, and reserve unto appellant and said appellee a ten thirty-seconds interest therein, or five thirty-seconds to each of them, and that said appellee breached this agreement by procuring his brother, the appellee, Ed or E. J. Donohue, to acquire said lease by assignment from the Texarkana Oil Corporation, without reserving to appellant and appellee, R. J. Donohue, said ten thirty-seconds interest. The complaint further alleged that said appellee fraudulently caused this lease to be assigned to his brother, E. J. Donohue, for the purpose of depriving the appellant of his interest therein or the profits arising therefrom. The prayer was that appellant's interest and right in and to a ten thirty-seconds interest in said oil and gas lease be declared and established, and that appellee, E. J. Donohue, be declared to hold said interest in trust for him and said R. J. Donohue. It was further prayed that, if said R. J. Donohue secured a lesser interest in said lease than a ten thirty-seconds, or any consideration other than an interest in said lease, he be required to account therefor to appellant.

We agree with the trial court that no cause of action was stated in this complaint for equitable relief. The complaint shows on its face that appellant and R. J. Donohue were not to furnish any part of the purchase price of said lease, but only that they should procure a purchaser. No fraud is alleged in the acquisition of the lease by E. J. Donohue, but it is charged that both appellees, knowing of the oral agreement between appellant and R. J. Donohue, fraudulently caused said lease to be assigned to E. J. Donohue for the purpose of depriving him of any interest therein or any profits arising therefrom. Neither appellant nor R. J. Donohue ever owned the lease or any interest therein, the allegation being that they had an oral option to buy, and that they entered into an oral agreement whereby they would sell to some third party, said lease for $10,000, to drill a well, reserving a ten thirty-seconds interest to themselves. It appears, therefore that appellant is seeking to impress upon the lease from the Texarkana Oil Corporation to E. J. Donohue and implied trust based on his alleged oral agreement with R. J. Donohue. We think such trust may not

586

be established by parol testimony, but falls within the statute of frauds. We have had many decisions to that effect. In *Bland* v. *Talley*, 50 Ark. 71, 6 S. W. 234, it was held, to quote the headnotes: "A parol agreement that another shall be interested in the purchase of lands, or a parol declaration by a purchaser that he buys for another, without an advance of money by that other, falls within the statute of frauds, and cannot create a resulting trust. On a bill to establish a resulting trust in a tract of land, the plaintiff in effect, proved that he and W. and J. entered into a parol agreement to purchase the land on a credit, pay for it out of their joint labor, and that the three should own it, when paid for, in equal shares; that W. purchased the land in his own name, furnished all the money and took the title to himself. *Held*: that the agreement was void by the statute of frauds, and there was no trust in favor of the plaintiff and J." According to the rule laid down in this case and subsequently consistently followed, if R. J. Donohue had taken the title to said lease in his own name, instead of the name of his brother, E. J. Donohue, he would have been protected in his title against the claim of appellant by reason of the statute of frauds. See also *Robbins* v. *Kimball*, 55 Ark. 414, 18 S. W. 457; *Roberts* v. *Pratt*, 147 Ark. 575, 228 S. W. 379; *Eason* v. *Wheeler*, 167 Ark. 320, 268 S. W. 29.

Nor can we agree that the facts in the complaint establish a trust *ex maleficio*, for the reason that the complaint fails to allege that there was any fraud in the conveyance from the Texarkana Oil Corporation to E. J. Donohue. In *LaCotts* v. *LaCotts*, 109 Ark. 335, 159 S. W. 1111, this court said: "We are of the opinion that, according to the proof adduced, this case does not contain any elements of a trust *ex maleficio*, for the reason that the proof does not show that appellant procured the title by the commission of any fraud. Putting it in the strongest light, the testimony adduced by appellee only tends to establish a promise on the part of appellant to purchase the land and hold it for appellee, and a breach of that promise. This alone is not sufficient to establish a trust *ex maleficio*." Citing *Spradling* v. *Spradling*, 101 Ark. 451, 142 S. W. 848. The court in said case quoted

Judge RIDDICK's language in *Ammonette* v. *Black,* 73 Ark. 310, 83 S. W. 910, concerning a trust *ex maleficio,* as follows: "There must, of course, in such cases be an element of positive fraud by means of which the legal title is wrongfully acquired, for, if there was only a mere parol promise, the statute of frauds would apply." Citing 2 Pom. Eq., § 1056. See also *Worthen Company* v. *Vogler,* 145 Ark. 161, 224 S. W. 626, where it was held, to quote a syllabus: "A trust *ex maleficio* cannot be established merely on a broken promise to purchase lands for another; there being no positive fraud perpetrated other than the breach of the promise." To the same effect see *Davidson* v. *Edwards,* 168 Ark. 306, 270 S. W. 94; *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822.

We think the cases relied on by counsel for appellant, *Bray* v. *Timms,* 162 Ark. 247, 258 S. W. 338, and *Edlin* v. *Moser,* 176 Ark. 1107, 5 S. W. (2d) 923, have no application to the facts alleged in the complaint in this case.

It is finally insisted by appellant that, even though it be held that he is not entitled to have a trust fixed upon said lease or the interest of R. J. Donohue retained therein, if any, he is still entitled to an accounting of the profits received by Donohue from the sale of the lease. We cannot agree with appellant in this contention. We do not believe the allegations of the complaint show that any partnership existed between appellant and R. J. Donohue. So far as the complaint shows, this is the first venture between them. Neither of them acquired this lease and neither of them advanced any money looking to the acquisition thereof. It was not contemplated that they should ever acquire the lease, but only that they might secure a purchaser therefor, and that they would reserve an interest therein. So far as the complaint shows, it was not the purpose to sell said interest nor is it alleged that any sale has been effected. The allegation of the complaint is that the Texarkana Oil Corporation conveyed the lease to E. J. Donohue and that an interest was reserved by R. J. Donohue. Just how R. J. Donohue could reserve an interest in the assignment of a lease absolute in form from the Texarkana Oil Cor-

poration to E. J. Donohue is not alleged further than that it may be inferred that he had some secret agreement with his brother to give him an interest therein. There was no reservation in the deed of assignment. In *O'Bryan* v. *Zuber,* 168 Ark. 613, 271 S. W. 347, the facts were that Zuber claimed a partnership between him and O'Bryan to buy and operate an orchard in Pike County, each to pay one-half of the purchase price and to share equally in the expense and profits from the operation thereof. O'Bryan furnished all of the money to purchase the orchard and took the title in his own name, and Zuber claimed that O'Bryan agreed to lend him his one-half of the purchase price at 8 per cent. Passing upon this question, the court said: ''The contract, so far as appellee's alleged half interest in the lands is concerned, was clearly within the statute of frauds, and the appellant, under the issue raised by the pleadings, as well as the proof, had a right to avail himself of the statute. There is no testimony in this record to warrant a finding that the parties had entered into a contract of partnership for the purchase of the land, in order to share in the profits and resale of the land itself. There is nothing to show that the parties contemplated a resale of the land. According to the testimony of the appellee himself, they were to own the land jointly and to share as partners in the operation and cultivation of the land. * * * Now there was no previous partnership between the appellant and the appellee for the purchase and sale of lands and to share equally in the profits from such transaction. There were no partnership funds created for that purpose. On the contrary, the purchase of the land was the first and only transaction for which it is alleged the partnership was formed.''

The allegations of the complaint being insufficient to show a partnership arrangement between appellant and R. J. Donohue, it follows that he is not entitled to an accounting.

No error appearing, the decree is affirmed.